UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA                )
                                        )
        v.                              )
                                        )        Criminal No. 11-039 (PLF)
RICARDO HUNTER,                         )
                                        )
               Defendant.               )
_____)

MEMORANDUM OPINION AND ORDER

        Pending before this Court is defendant Ricardo Hunter's Emergency Motion for

Compassionate Release ("Def.'s Mot.") [Dkt. No. 162].  Mr. Hunter contends that he is at a high

risk of contracting the novel coronavirus ("COVID-19") and requests compassionate release

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Defendant's Reply to Government's Opposition to

Motion for Compassionate Release ("Def.'s Reply") [Dkt. No. 176] at 1.  The government

opposes this motion.  United States' Opposition to Defendant's Emergency Motion for

Compassionate Release ("Gov't Opp.") [Dkt. No. 173-2].  For the reasons that follow, the Court

will grant Mr. Hunter's motion for compassionate release. [1]

_____

[1]        The Court has reviewed the following documents in connection with the pending
motion:  Statement of Offense and Memorandum in Support of Guilty Plea ("SOO") [Dkt. No.
80]; Plea Agreement as to Ricardo Hunter ("Plea Agrmt.") [Dkt. No. 81]; Presentence
Investigation Report ("PSR") [Dkt. No. 86]; Judgment as to Ricardo Hunter ("Judgment") [Dkt.
No. 96]; Emergency Motion for Compassionate Release ("Def.'s Mot.") [Dkt. No. 162]; Sealed
Document Exhibit G ("Sealed Ex. G") [Dkt. No. 171]; United States' Opposition to Defendant's
Emergency Motion for Compassionate Release ("Gov't Opp.") [Dkt. No. 173-2]; Inmate
Disciplinary Record ("Discip. Rec.")  [Dkt. No. 173-4]; Defendant's Reply to Government's
Opposition to Motion for Compassionate Release ("Def.'s Reply") [Dkt. No. 176]; and
Supplement to Reply in Support of Emergency Motion for Compassionate Release [Dkt. No
177].

I.  BACKGROUND

On December 3, 2012, defendant Ricardo Hunter pled guilty under

Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to:  (1) two counts of Interference

with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951; (2) one count of Using,

Carrying, and Possessing a Firearm During a Crime of Violence, in violation of 18 U.S.C.

§ 924(c); (3) one count of Attempted Armored Car Robbery While Armed, in violation of 18

U.S.C. § 2113(a) and (d); and (4) a related forfeiture allegation.  Plea Agrmt. ¶ 2.  On

March 1, 2013, Judge Richard Roberts sentenced Mr. Hunter pursuant to the binding plea

agreement to 180 months of incarceration and a period of 60 months of supervised release.

Judgment at 3-4.

Mr. Hunter, now 63 years old, is serving the remainder of his sentence at FCI

Edgefield.  Def.'s Mot. at 2.  Mr. Hunter has already served approximately 73% of his fifteen-

year sentence.  Id.  According to the defendant's motion, there have been a number of

COVID-19 infections at FCI Edgefield.  Id.  In addition to suffering from cervical spine

myelopathy, peripheral neuropathy, herniated discs, detached retinas, and cataracts, Mr. Hunter

has Type 2 diabetes, Stage 2 hypertension, and Hepatitis C, which make him particularly

vulnerable to COVID-19.  Id.  Due to these circumstances, Mr. Hunter submitted a request for

compassionate release to FCI Edgefield on April 10, 2020.  Id. at 15-16.  Although Mr. Hunter

received notice on April 24, 2020 that his request had been received, he has not received any

further response.  Id. at 16.  He now moves for a reduction of his sentence to time served

pursuant to 18 U.S.C § 3582(c)(1)(A)(i).  See Def.'s Reply at 2.

## II.  LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed . . . but the rule of finality is subject to a few narrow exceptions."  Freeman v. United States, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted).  One such exception is codified as 18 U.S.C. § 3582(c)(1)(A).  As modified by the First Step Act in 2018, Section 3582(c)(1)(A) allows courts to modify a sentence upon motion by a defendant once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request."  18 U.S.C. § 3582(c)(1)(A).  Mr. Hunter submitted a request for compassionate release to the warden on April 10, 2020 and more than 30 days have elapsed with no response; he therefore has exhausted his administrative remedies.

Once the exhaustion requirement has been met, a defendant must show that "extraordinary and compelling reasons warrant such a reduction," and that a sentence reduction is "consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission has stated that "extraordinary and compelling reasons" exist where the defendant is "suffering from a serious physical or mental condition" or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility."  U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), (III).  The Sentencing Commission has acknowledged, however, that there may be "[o]ther [r]easons" presenting "an extraordinary and compelling reason other than, or in combination with, the reasons described" elsewhere in the commentary.  United States v. Morris, Criminal No. 12-154, 2020 U.S. Dist. LEXIS 91040, at *20 (D.D.C. May 24, 2020) (quoting U.S.S.G.

§ 1B1.13 cmt. n.1(D)).  To that end, the COVID-19 pandemic falls under such an "other reason" that may present an "extraordinary and compelling reason" for a sentence reduction.  United States v. Morris, 2020 U.S. Dist. LEXIS 91040, at *20.

The statute and the policy statement further instruct the Court to consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable." U.S.S.G. § 1B1.13; see also 18 U.S.C. § 3582(c)(1)(A).  The Court must consider these factors "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence."  United States v. Johnson, Criminal No. 15-125, 2020 U.S. Dist. LEXIS 86309, at *13 (D.D.C. May 16, 2020).

## III.  DISCUSSION

Mr. Hunter's underlying medical conditions, which increase his potential to contract COVID-19, are "extraordinary and compelling" circumstances warranting a sentence reduction.  At 63 years old, he is in a particularly vulnerable age group.  In addition, Mr. Hunter's individual circumstances are consistent with the sentencing factors set out in 18 U.S.C. § 3553(a) because he has served over 73% of his sentence and is unlikely to pose a threat to the public.

Mr. Hunter suffers from Type 2 diabetes, Stage 2 hypertension, and Hepatitis C. Def.'s Mot. at 2.  According to the CDC, each of these ailments could place him at a higher risk for contracting COVID-19.  See Groups at Higher Risk for Severe Illness, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.  Mr. Hunter's underlying medical conditions and the presence of COVID-19 at FCI Edgefield are therefore "extraordinary and compelling" circumstances warranting a sentence reduction.

Reducing Mr. Hunter's sentence would also be consistent with the Section 3553(a) factors.  Mr. Hunter has served over 73% of his fifteen-year sentence and has a projected release date of December 21, 2023.  Def.'s Mot. at 16.  The substantial time served of his original sentence reflects the seriousness of his offenses and constitutes adequate deterrence to criminal conduct.

The government nevertheless argues that Mr. Hunter has not "shown that he no longer poses a danger to the public," particularly in light of his criminal history.  Gov't Opp. at 12.  The government is correct in highlighting the seriousness of Mr. Hunter's criminal offenses.  Mr. Hunter has spent the majority of his adult life incarcerated for violent crimes.  PSR at 20.  In 1977, Mr. Hunter was convicted of second-degree murder and armed robbery, for which he served over eighteen years in prison.  Id. at 12.  While incarcerated, Mr. Hunter had a number of disciplinary infractions, including violent altercations with other prisoners.  See id. at 12-13; see also Gov't Opp. at 15-16.  Mr. Hunter's violent and disruptive conduct led to numerous prison transfers over the course of his sentence.  See PSR at 12-13.  Then in 2000, Mr. Hunter was convicted of destruction of property after setting fire to his then-girlfriend's home while he, his then-girlfriend, and a minor child were inside.  Id. at 14; see also Gov't Opp. at 16.  Mr. Hunter caused $15,000 worth of property damage and was sent back to prison for approximately nine years.  PSR at 14.  Most recently, Mr. Hunter participated in a series of armed robberies throughout 2010 and 2011, which led to the theft of $36,519.77 and the fifteen-year sentencing he is currently serving.  See PSR at 6-8.

Mr. Hunter's criminal acts are very serious and disturbing.  Notwithstanding the gravity of Mr. Hunter's offenses, a significant amount of time has passed since each of these crimes.  Mr. Hunter was convicted of second-degree murder and armed robbery over forty years

ago and was convicted of destruction of property over twenty years ago.  See PSR at 12, 14.  Mr. Hunter's most recent offenses of armed robbery and attempted armed robbery took place nearly a decade ago.  See Judgment at 1.  In addition, Mr. Hunter's current disciplinary record shows a decrease in violence.  See Discip. Rec. at 1.  Mr. Hunter has not had a disciplinary infraction in over three years and his records indicate only two minor prior infractions:  the first for refusing a work assignment in 2016 and the second for pushing an inmate in 2017.  Id.  This second incident occurred more than three years ago and did not lead to serious injury.  See id.  Despite these infractions, and although Mr. Hunter is currently housed at a medium security facility, the Bureau of Prisons recommends that his custody classification be decreased.  Def.'s Mot. at 41 (citing Sealed Ex. G).

Mr. Hunter's numerous physical ailments further decrease the likelihood that he will be a threat to the public in the future.  Mr. Hunter's ailments include cervical spine myelopathy, peripheral neuropathy, herniated discs, detached retinas, cataracts, Type 2 diabetes, Stage 2 hypertension, and Hepatitis C.  Def.'s Mot. at 2.  Although many of these conditions were present in 2017 when Mr. Hunter pushed another inmate, Mr. Hunter's health has declined over the past three years.  See id. at 6, 37.  In addition to wearing a back brace, Mr. Hunter now relies on a cane and previously required a walker from 2017 through 2018.  See id. at 6.  Mr. Hunter also has "low vision" in both eyes, despite undergoing cataract surgery in 2017.  See id. at 7.  Although these conditions do not prevent him from committing further criminal acts, Mr. Hunter's severe physical limitations considerably reduce his risk to the public.

Mr. Hunter's reintegration plans, correctional treatment, and community engagement at FCI Edgefield further support his capacity to reenter society.  Following his release, Mr. Hunter plans to reside with a close friend and his friend's family in North Carolina.

Def.'s Mot. at 35.  Mr. Hunter will also have the support of his aunt, uncle, sister, and two children, with whom he has maintained regular communication throughout his incarceration. See id. at 41 (citing Sealed Ex. G).  Mr. Hunter has also prepared for reintegration by addressing his substance abuse issues.  See id. at 37, 39-40.  Although the government highlights Mr. Hunter's inability to abstain from taking drugs when paroled in 2009, Gov't Opp. at 17, Mr. Hunter has since completed two drug treatment programs in 2014 and 2016, Def.'s Mot. at 39. Mr. Hunter has also demonstrated his willingness to learn new skills and support his peers through his work as a clerk in the FCI Edgefield library and as a suicide-watch companion.  See Def.'s Mot. at 40-41.  Through these roles, Mr. Hunter has learned practical legal research and typing skills while also demonstrating compassion and cooperation within his community.  See id.

Mr. Hunter's underlying medical conditions constitute extraordinary and compelling circumstances warranting a sentence reduction.  In addition, Mr. Hunter's sentence reduction is consistent with the factors set out in Section 3553(a) because he has already served a substantial portion of his sentence, has serious physical limitations, and has undertaken actions that demonstrate his capacity to reenter society.  The Court will grant Mr. Hunter's motion for compassionate release.  For the foregoing reasons, it is hereby

ORDERED that pursuant to the authority vested in this Court to reduce a previously imposed term of imprisonment under 18 U.S.C § 3582(c)(1)(A), defendant's Emergency Motion for Compassionate Release [Dkt. No. 162] is GRANTED; and it is

FURTHER ORDERED that (1) the term of 180 months of imprisonment on Counts Two, Three, Six, and Eight as set forth in the original Judgment [Dkt. No. 96] dated March 8, 2013, is hereby reduced to a sentence of TIME SERVED; (2) the defendant shall be

7

released as soon as is practicable; (3) the defendant shall notify the Probation Office of the address where he plans to reside upon release; and (4) the defendant shall abide by all of the conditions of supervised release set forth in the original Judgment.

        SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 25, 2020